IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GENNIFER TOWNSLEY, et al., individually and
on behalf of all others similarly situated,
        Plaintiffs,

v.                                                         Civil Action No. 3:19-cv-849

ATLANTIC UNION BANK,
        Defendant.

## **OPINION**

Marty Hinton and Gennifer Townsley have checking accounts with Atlantic Union Bank ("Atlantic Union"). In 2019, Atlantic Union charged Hinton and Townsley overdraft fees ("OD fees") because certain transactions overdrew their account balances. Hinton and Townsley have sued Atlantic Union on behalf of themselves and others similarly situated, alleging that the methods by which Atlantic Union processed those transactions breached the parties' contracts. They also contend that Atlantic Union has been unjustly enriched through its business practices.

Atlantic Union has moved to dismiss or sever Hinton's claims; to dismiss, or in the alternative, for partial summary judgment as to Townsley's breach of contract claim (Count Two); and to dismiss both plaintiffs' unjust enrichment claims (Count Three). The Court held a hearing on the motions on August 13, 2020. As discussed at the hearing and for the reasons set forth below, the Court will grant the motion to sever but will require the parties to conduct joint discovery on the claims; will deny the motion to dismiss as to Count Two; and will grant the motion to dismiss as to Count Three.

## I. <u>FACTS ALLEGED IN THE COMPLAINT</u>[1]

### *A. The Deposit Agreement*

Atlantic Union has a standardized "Deposit Account Terms and Conditions" agreement (the "deposit agreement") that governs checking accounts. Pursuant to the deposit agreement, Atlantic Union makes electronic direct deposit funds available to the account holder on the day it receives the deposit, and cash and check deposits available the following business day. The deposit agreement also provides that Atlantic Union may credit and debit items by any method and in any order it chooses. In general, however, Atlantic Union posts ATM and debit card transactions based on the date and time they occur. It then posts "certain other non-check transactions such as overdraft protection fees in order of dollar amount, from highest to lowest." (Dk. No. 27-1, at 7.) Then, Atlantic Union pays checks in order of check number. Atlantic Union retains the discretion to pay or return an item when the account lacks enough funds to cover the transaction. Paying an item without sufficient funds in the account results in an OD fee. Returning an item because the account does not have sufficient funds results in a non-sufficient fund fee ("NSF fee"). Atlantic

---

[1] Atlantic Union has moved to dismiss Townsley's claim pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. A Rule 12(b)(6) motion gauges the sufficiency of a complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165 (4th Cir. 2016). In evaluating such a motion, courts typically focus only on the complaint, documents attached to the complaint, and documents explicitly incorporated into the complaint by reference. *Id.* at 166. In appropriate cases, however, courts may also (1) take judicial notice of public records, such as state court records, and (2) consider documents submitted by the movant if the documents are integral to the complaint and indisputably authentic. *Id.*; *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006). Here, Atlantic Union has provided Townsely's bank statement, a declaration regarding the order of posting to Townsley's account, and information regarding the Square transaction verification process. Because the bank statement reflects the transaction at issue in the complaint and Townsley does not dispute the statement's authenticity, the Court considers facts drawn from that statement. The Court, however, does not consider facts drawn from the remaining attachments and will resolve Atlantic Union's motion pursuant to Rule 12(b)(6).

Union encourages account holders to keep records and follow "good account management practices" to "avoid writing checks or drafts without sufficient funds" in their accounts. (*Id.*)

The deposit agreement also sets forth a process for electronic fund transfers initiated by third parties:

> **Electronic Fund Transfers Initiated By Third Parties.** You may authorize a third party to initiate electronic fund transfers between your account and the third party's account. These transfers to make or receive payment may be one-time occurrences or may recur as directed by you. These transfers may use the Automated Clearing House (ACH) or other payments network. Your authorization to the third party to make these transfers can occur in a number of ways. For example, your authorization to convert a check to an electronic fund transfer or to electronically pay a returned check charge can occur when a merchant provides you with notice and you go forward with the transaction (typically, at the point of purchase, a merchant will post a sign and print the notice on a receipt). In all cases, these third party transfers will require you to provide the third party with your account number and bank information. This information can be found on your check as well as on a deposit or withdrawal slip. Thus, you should only provide your bank and account information (whether over the phone, the Internet, or via some other method) to trusted third parties whom you have authorized to initiate these electronic fund transfers. Examples of these transfers include, but are not limited to:
>
> • **Preauthorized credits.** You may make arrangements for certain direct deposits to be accepted into your checking or savings account(s).
>
> • **Preauthorized payments.** You may make arrangements to pay certain recurring bills from your checking or savings account(s).
>
> • **Electronic check conversion.** You may authorize a merchant or other payee to make a one-time electronic payment from your checking account using information from your check to pay for purchases or pay bills.
>
> • **Electronic returned check charge.** You may authorize a merchant or other payee to initiate an electronic funds transfer to collect a charge in the event a check is returned for insufficient funds.

(*Id.* at 11-12.)

Further, Atlantic Union maintains an overdraft services disclosure. (*See* Dk. No. 27-2.) Atlantic Union charges $36 per item as a NSF or OD fee. Atlantic Union may authorize and pay

3

overdraft transactions at its discretion. Further, the overdraft services disclosure provides that Atlantic Union can impose "[f]ees ... for covering overdrafts created by check, in-person withdrawal, ATM withdrawal, or other electronic means such as a debit card. Atlantic Union Bank does not authorize and pay overdrafts for ATM and onetime debit card transactions unless [it] receive[s] authorization from [the account holder] to opt in to that service." (*Id.* at 2.) Account holders are liable for OD or NSF fees charged "regardless of whether [the account holder] signed the item or benefitted from the charge or overdraft." (Dk. No. 27-1, at 3.)

### *B. Debit Transactions*

When a merchant physically or virtually swipes an account holder's debit card, the credit card terminal connects to Atlantic Union to verify that the account is valid and has enough funds to cover the transaction. If the merchant approves the transaction, Atlantic Union immediately reduces the account balance by the purchase amount, sets the funds aside to cover the transaction, and updates the account holder's available balance to reflect the charge. Atlantic Union must decide at the point of sale whether to authorize or decline the transaction. At some point after it authorizes the transaction, Atlantic Union transfers the funds from the holder's account to the merchant's account. If that process leaves the holder's account with a negative balance, Atlantic Union charges a $36 OD fee. These transactions are called Authorize Positive, Purportedly Settle Negative ("APPSN") transactions.

Hinton has a checking account with Atlantic Union governed by the deposit agreement. In December, 2019, Hinton made a debit card transaction. At that time, Hinton had enough funds in his account to cover the transaction. Atlantic Union immediately set aside funds in his account to cover the transaction. On December 16, 2019, Atlantic Union settled the charge using the available

4

account balance rather than with the funds it set aside. It then assessed a $36 OD fee on Hinton's account.

### C. Verification Transactions

Some companies, such as Square, allow a user to send and receive payments using the companies' systems. When a user sets up an account, the company verifies the user's bank account information by completing a test transaction. During that transaction, it deposits and withdraws a few cents from the account "virtually simultaneously." (Am. Compl. ¶ 57.) This process verifies "that the account is valid and [that] the entity can communicate with the account." (*Id.*) Atlantic Union knows that the account holder has not made a purchase, debit, or transaction during this verification process. But it splits the deposit and withdrawal and sometimes charges OD fees for the withdrawal.

Townsley has a checking account with Atlantic Union governed by the deposit agreement. On October 4, 2019, several transactions occurred that affected Townsley's account balance. First, Townsley made a Wells Fargo mortgage payment in the amount of $1,190.64. (Dk. No. 24, at 6.) Townsley also signed up for Square, an online service through which she can accept payments into her personal bank account. Square initiated the verification process by depositing one cent into Townsley's account and then withdrawing the penny "that had been deposited just minutes earlier." (Am. Compl. ¶ 63; Dk. No. 24, at 6.) Finally, Townsley received a return credit for $99.95. (Dk. No. 24, at 6.)

Townsley had a beginning account balance of $320.56. (Dk. No. 24, at 5.) Atlantic Union first added the one-penny deposit and the $99.95 return credit to Townsley's account balance, bringing the balance up to $420.52. (*Id.* at 6.) Atlantic Union then withdrew the $1,190.64 mortgage payment from Townsley's account, which resulted in a negative balance of $770.12.

5

(*Id.*) Next, Atlantic Union withdrew one penny, completing Square's verification process. (*Id.*) The second withdrawal resulted in a negative balance of $770.13. Because these two withdrawals resulted in negative balances, Atlantic Union charged $72 in OD fees—$36 for the mortgage payment and $36 for the one-penny withdrawal. (*Id.*)

### D. *The Plaintiffs' Claims*

Hinton has asserted a claim for breach of contract, including the covenant of good faith and fair dealing, against Atlantic Union on behalf of himself and a class of similarly situated individuals ("the APPSN class") (Count One). He contends that Atlantic Union breached the deposit agreement and its obligation of good faith and fair dealing by using his available funds rather than the funds Atlantic Union set aside to settle debit transactions. Townsley has asserted a breach of contract claim, including the covenant of good faith and fair dealing, against Atlantic Union on behalf of herself and others similarly situated ("the OD/NSF class") (Count Two). Townsley alleges that Atlantic Union breached the deposit agreement by choosing an order of posting that caused OD fees on the verification transactions.

Additionally, both plaintiffs and classes have asserted an unjust enrichment claim against Atlantic Union (Count Three). Atlantic Union has moved (1) to dismiss Hinton's claims, or in the alternative, to sever them from Townsley's claims; and (2) to dismiss Townsley's and the unjust enrichment claims pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for partial summary judgment pursuant to Rule 56.

## II. **DISCUSSION**

### B. *Count Two: Townsley's Breach of Contract Claim*[2]

#### *1. Legal Standard*

"Under Virginia law '[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.'" *W. Insulation, LP v. Moore*, 316 F. App'x 291, 297 (4th Cir. 2009) (quoting *Filak v. George*, 267 Va. 612, 594 S.E.2d 610, 614 (2009)). Courts must construe contracts as whole "with all parts being harmonized whenever possible." *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 384, 493 S.E.2d 516, 519 (1997). "[T]he construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim." *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992).

#### *2. Analysis*

Atlantic Union asks the Court to dismiss Count Two. It argues that it complied with the express terms of the deposit agreement, including with the method of posting. Townsley, however,

---

[2] Atlantic Union has moved to dismiss Counts Two and Three pursuant to Rule 12(b)(6). A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

contends that the contract language is ambiguous and that the account verification process did not reduce her account balance based on a common understanding of those terms.

Relevant here, Townsley alleges that "[t]here was no 'overdraft created' since the verification process did not result in a negative balance." (Compl. ¶ 70.) *Kelly v. Community Bank, N.A.*, No. 819-cv-919-MAD-CFH, 2020 WL 777463, at *6 (N.D.N.Y. Feb. 18, 2020), recently considered a similar issue. There, the court considered whether the plaintiffs sufficiently alleged a breach of contract claim after a bank charged OD fees for account verification transactions. The court concluded that the plaintiff stated a claim because the verification process transactions "do not reduce the account balance. Rather, the funds necessary to cover the transaction are deposited into the account and then subsequently withdrawn by the depositing company." *Id.* (citations omitted). The court concluded that amending the complaint as to those claims would not be futile "[b]ecause the agreement implies that an overdraft only occurs when the account balance is not sufficient to cover the charge, and micro-deposits include the funds necessary to cover the charge, reasonable minds could differ as to the meaning of this term." *Id.*

Here, Atlantic Union's overdraft disclosure explains that it assesses OD fees to "help [the account holder] avoid the inconvenience and embarrassment that comes when [the account holder doesn't] have the funds to cover [the] transactions." (Dk. No. 27-2, at 1.) Townsley, however, alleges that Square deposited the funds necessary to cover the withdrawal that occurred immediately after it made the deposit. (Compl. ¶ 62.) Thus, Townsley alleges that the verification process did not further reduce her account balance because the process includes "the funds to cover" the subsequent withdrawal, so the process does not qualify as an "overdraft." (Dk. No. 27-2, at 1.) The contract, therefore, is sufficiently ambiguous to "preclude[ ] dismissal on a motion

for failure to state a claim." *Martin Marietta Corp.*, 991 F.2d at 97; *see also Kelly*, 2020 WL 777463, at *6.

Moreover, Townsley has adequately alleged that Atlantic Union breached the implied covenant of good faith and fair dealing. In Virginia, every contract includes an implied covenant of good faith and fair dealing. *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009) (citing *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 541–42 (4th Cir.1998) "[T]he elements of a claim for breach of an implied covenant of good faith and fair dealing are (1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Id.* (citing *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 251 Va. 28, 466 S.E.2d 382, 386 (1996)). Although the duty does not prevent parties from exercising their contract rights, *see Ward's Equip.*, 254 Va. at 385, 493 S.E.2d at 520, parties cannot exercise their contractual discretion in bad faith. *See Va. Vermiculite, Ltd. v. W.R. Grace & Co.—Conn.*, 156 F.3d 535, 542 (4th Cir. 1998). Parties also cannot exercise their contract rights dishonestly. *See Charles E. Brauer Co.*, 251 Va. at 35, 466 S.E.2d at 386.

Here, the deposit agreement allowed Atlantic Union to credit and debit items pursuant to its standard order of posting or "using any method and order of posting which [Atlantic Union] choose[s] in [its] sole discretion." (Dk. No. 27-1, at 7.) Atlantic Union contends that it followed the standard order of posting, and therefore, that it exercised its contractual rights rather than its contractual discretion. But the contract's plain language gives Atlantic Union the discretion to choose how to post transactions, including whether to follow its standard order of posting. Indeed, Townsley argues that Atlantic Union abused its contractual discretion by choosing a method that unfairly extracted OD fees. Because Townsley sufficiently alleges that Atlantic Union exercised

9

its contractual discretion in bad faith, the Court declines to dismiss her claim at this stage. *See Va. Vermiculite, Ltd. v. W.R. Grace & Co.—Conn.*, 156 F.3d 535, 542 (4th Cir. 1998).

Accordingly, the Court will deny Atlantic Union's motion to dismiss as to Count Two

### B. Count Three: Unjust Enrichment

Atlantic Union argues that the Court must dismiss both plaintiffs' unjust enrichment claims because the plaintiffs cannot recover in both equity and contract. Rule 8 allows a plaintiff to plead alternative or inconsistent claims. *See* Fed. R. Civ. P. 8(d)(2). Nevertheless, "[w]here a contract governs the relationship of the parties, the equitable remedy of restitution grounded in quasi-contract or unjust enrichment does not lie." *WRH Mortg., Inc. v. S.A.S. Assocs.*, 214 F.3d 528, 534 (4th Cir. 2000). Thus, a plaintiff may only plead an unjust enrichment claim when he or she disputes the applicability or enforceability of the contract. *See McPike v. Zero-Gravity Holdings, Inc.*, 280 F. Supp. 3d 800, 810 (E.D. Va. 2017) ("Although it makes perfect sense for a plaintiff to plead quasi-contractual claims in the alternative when the applicability or enforceability of the contract is in dispute, the rationale for alternative pleading disappears when neither party contests the applicability or validity of the contract.").

Here, the plaintiffs do not allege that the deposit agreement is unenforceable.[3] Indeed, the plaintiffs argue that Atlantic Union assessed overdraft fees "in violation of the contract." (Dk. No. 39, at 19.) At the hearing, the plaintiffs suggested that the Court may later decide that the contract does not apply to the fees at issue. None of the allegations in the amended complaint, however, support this argument. Thus, because the amended complaint fails to dispute the applicability or

---

[3] The plaintiffs allege that "Atlantic Union's adhesion contracts . . . fail to inform consumers about the true nature of Atlantic Union's processes and practices." (Am. Compl. ¶ 18.) But the plaintiffs do not argue that the deposit agreement is unenforceable.

enforceability of the contract, the Court will dismiss Count Three with prejudice. *See McPike*, 280 F. Supp. 3d at 810.

### *C. Count One: Motion to Dismiss/Sever Hinton's Claims*

Atlantic Union has moved to dismiss or sever Hinton's claims pursuant to Rules 20 and 21. Rule 20(a) permits plaintiffs to join their claims in a single action if (1) their claims arise out of the same transaction, occurrence, or series of transactions and occurrences; and (2) common questions of law or fact exist that will arise as to all plaintiffs. Rule 20 "promote[s] trial convenience and expedite[s] the final determination of disputes, thereby preventing multiple lawsuits." *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983). Thus, a court may try reasonably related claims together. *See Sykes v. Bayer Pharm. Corp.*, 548 F. Supp. 2d 208, 218 (E.D. Va. 2008). Courts apply the test under Rule 20 "on a case by case basis." *Saval*, 710 F.2d at 1031. If plaintiffs have improperly joined their claims, the Court may sever those claims into separate actions. *See* Fed. R. Civ. P. 21. A court, however, should not dismiss an action due to an improperly joined party. *See id.*

As explained at the hearing, although some factual and legal similarities exist, Townsley's and Hinton's claims involve fees incurred for different types of withdrawals or debits. Thus, they arise out of different "transaction[s], occurrence[s], or series of transactions or occurrences" and involve different "question[s] of law or fact" Fed. R. Civ. P. 20(a)(1)(A). Pursuant to Rule 21, however, the Court declines to dismiss Hinton's claim based on improper joinder. *See id.* Instead, the Court will sever Townsley's and Hinton's claims. Nevertheless, to the extent possible, the Court will require the parties to conduct discovery on both claims together.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant in part Atlantic Union's motion to dismiss or sever Hinton's claims. The Court will sever Counts One and Two but will require the parties to engage in joint discovery as to those claims. Further, the Court will grant in part Atlantic Union's motion to dismiss or for summary judgment. The Court will deny the motion as to Count Two. The Court will grant the motion as to Count Three and will dismiss Count Three with prejudice.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 19 August 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge